UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
BERNARD SINGLETON,                                          :
:
                    Plaintiff,                              :
:    06 Civ. 6588 (GEL)
  -v.-                                                      :
:    **OPINION AND ORDER**
MICHAEL B. MUKASEY, Attorney General of                     :
the United States,                                          :
:
                    Defendant.                              :
:
------------------------------------------------------------x

Kenneth W. Richardson, New York, NY,
for plaintiff.

Michael J. Garcia, United States Attorney for the
Southern District of New York, by Daniel P. Filor,
Assistant United States Attorney, for defendant.

GERARD E. LYNCH, District Judge:

        Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and the Age Discrimination in Employment Act, 129 U.S.C. § 621 ("ADEA"), alleging that the federal Bureau of Prisons' denied him a promotion based on his age, his sex, his race, and in retaliation for his prior Equal Employment Opportunity ("EEO") activity. Defendant moves for summary judgment on the grounds that (1) plaintiff failed to timely exhaust his administrative remedies; (2) plaintiff cannot establish a prima facie case under Title VII or the ADEA; and (3) the government's actions were based on legitimate, non-discriminatory reasons, and plaintiff has not adduced evidence to rebut the government's reasons. The defendant's motion will be granted.

## BACKGROUND

Plaintiff Bernard Singleton, an African-American, was an employee for the Bureau of Prisons ("BOP") from 1985 to 2006, when he retired. (Singleton Aff.[1] ¶¶ 1, 2, 5.) When Singleton retired, he held the position of Warehouse Supervisor at the Metropolitan Correctional Center ("MCC"), a detention facility in Manhattan. (Id.)

In 2003 and 2004, Singleton was considered three times for a promotion to Trust Fund Supervisor at the Metropolitan Detention Center ("MDC"), a detention facility in Brooklyn. (Def. R. 56.1 Statement[2] ¶¶ 6-22.) He was not selected for the position any of the three times. (Id.) The first time Singleton applied, he was not selected because he did not meet the posted qualifications for the position. (Id. ¶¶ 5-7.) No one was hired to fill the position at that time because an insufficient number of qualified people had applied. (Id. ¶ 8.)

The second time Singleton applied, the BOP had lowered the qualifications requirement, and Singleton was now considered qualified for the position. (Id. ¶¶ 9-10.) Singleton was selected as a finalist for the position, along with four other applicants: a white man, two other black men, and a black woman. (Id. ¶ 12.) Neither Singleton nor any of the other four finalists was selected to fill the position. (Id. ¶ 18.) The reason, according to BOP management, was two-fold: a concern at BOP that prison administration was "top-heavy," that is, employing too

---

[1] Singleton's Affidavit is Exhibit D to the Attorney's Declaration [in] Opposition to Defendant's Motion to Dismiss ("Richardson Declaration").

[2] Singleton has not submitted a Rule 56.1 Statement of his own, and defendant's Rule 56.1 Statement therefore may be "deemed admitted for purposes of the motion." Local Civ. R. 56.1(c); see also Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (per curiam). More importantly, Singleton fails to dispute the substance of most of defendant's Rule 56.1 Statement. Where Singleton has proffered evidence that does raise a factual dispute, the Court will consider it despite his failure to comply with Rule 56.1.

many supervisors relative to line staff (id. ¶¶ 14-15), and the fact that the BOP Regional Director, the person responsible for making the final selection, was about to retire, and his replacement, who would more appropriately make such a prospective decision, would not take office in time to make a selection before the position was scheduled to "expire" under BOP personnel rules (id. ¶¶ 16-17). In light of these concerns, BOP decided not to fill the position at that time. (Id. ¶ 18.)

The BOP posted the position again shortly thereafter, and Singleton's application was considered a third time. (Id. ¶¶ 21-22.) However, by that point, a formal BOP initiative had been undertaken to reduce supervisory staff, including by consolidating positions at institutions in close geographic proximity. (Id. ¶ 25.) According to the wardens of the MCC and MDC, it was in response to this initiative that they recommended the consolidation of several supervisory positions, including the Trust Fund Supervisor, and the positions at the two institutions were consolidated. (Id. ¶ 27.) The incumbent Trust Fund Supervisor at the MCC, Lisette Ortiz-Garcia, thereafter assumed responsibility over the MDC as well. (Id. ¶ 30.) Ortiz-Garcia, a Hispanic woman, was Singleton's supervisor at the time, and did not receive a promotion or a pay increase as a result of her taking on the added responsibility. (Id. ¶¶ 30-33; Singleton Aff. ¶ 5.) In light of this decision to consolidate the positions, neither Singleton nor any of the other applicants was awarded the MDC Trust Fund Supervisor position, and the BOP informed Singleton of this decision in a letter dated July 13, 2004. (Def. R. 56.1 Statement ¶ 34.)

On September 23, 2004, Singleton learned that Ortiz-Garcia was assuming the responsibilities of the MDC Trust Fund Supervisor. At the same time, Singleton also learned that he would no longer serve as "acting" Trust Fund Supervisor for the MCC. (Singleton Aff. ¶

6.) Up to that point, Singleton had assumed the responsibilities of his supervisor Ortiz-Garcia when she was absent. (Singleton Dep.[3] 51-52.) These responsibilities included oversight of additional MCC facilities and supervision over three additional MCC employees. (Id. 55-56.) Singleton received no official title nor additional compensation as a result of the additional responsibilities he took on. (Id. 52.) The person who replaced Singleton as acting Trust Fund Supervisor at the MCC was Yimesi Oladomoye. (Id. 50-51.) Oladomoye was the Assistant Trust Fund Supervisor at the MDC, and the consolidation that caused Ortiz-Garcia to become the Trust Fund Supervisor for both the MCC and the MDC also caused Oladomoye to become Assistant Trust Fund Supervisor for the two facilities. (Connors Supp. Decl. ¶¶ 3-4.)

Singleton contacted an EEO counselor on October 5, 2004, to complain of alleged discrimination by the BOP, and filed a formal EEO complaint on November 1. (Def. R. 56.1 Statement ¶¶ 35-36.) After exhausting his administrative appeals, Singleton filed suit in this Court alleging that the failure to promote him was based on his age, sex, and race in violation of Title VII and the ADEA. (Compl. ¶¶ 14, 17, 20.) Singleton contends that the decisions to withdraw the position and to consolidate its responsibilities into Ortiz-Garcia's job were made not for race-neutral reasons, but instead "to prevent me and other African-American males from getting promoted to the position." (Singleton Aff. ¶ 10.) Singleton also contends that he was denied the promotion and removed as acting Trust Fund Supervisor in retaliation for an earlier EEO complaint he had filed against the BOP. (Compl. ¶¶ 23, 26; Def. R. 56.1 Statement ¶ 3.)[4]

---

[3] Singleton's Deposition is Exhibit A to the Supplemental Declaration of Daniel P. Filor, dated May 29, 2008 ("Supplemental Filor Declaration").

[4] Singleton's complaint does not mention the allegation that he was removed as acting Trust Fund Supervisor (see Compl. ¶¶ 11-12), though it does appear as an attachment to his EEO

Defendant now moves for summary judgment on all of Singleton's claims. As Singleton has not defended his claims for age and sex discrimination in his opposition to the motion, those claims are deemed abandoned and need not be further discussed.

## DISCUSSION

**I.    Summary Judgment Standard**

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all "justifiable inferences" and resolve all ambiguities in the nonmovant's favor, and construe the facts in the light most favorable to the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading" but must "by affidavits or as otherwise provided . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The affidavits must be based on personal knowledge. Danzer v. Norden Systems, Inc., 151 F.3d 50, 57 n.5 (2d Cir. 1998). A mere "scintilla of evidence" in support of the nonmovant's position is insufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 252.

---

Complaint of Discrimination (Richardson Decl. Ex. A at 6), and the topic was discussed during Singleton's deposition (Singleton Dep. 50-57). However, because of the thinness of the record and the briefing on the subject, the Court heard oral argument on May 22, 2008, and received supplemental briefing from both parties thereafter. (See Def. Sur-Reply, dated May 29, 2008, and Pl. Sur-Response, dated June 6, 2008.)

## II. Failure to Promote

### A. Exhaustion of Administrative Remedies

Prior to bringing suit under Title VII, a federal employee must "exhaust the administrative remedies at his disposal." Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001). These include consulting with an EEO counselor within 45 days of the alleged discriminatory act. See 29 C.F.R. § 1614.105(a)(1). Failure to comply with the 45-day requirement is grounds for dismissal. See Boos v. Runyon, 201 F.3d 178, 184-85 (2d Cir. 2000). Singleton did not comply with this exhaustion requirement. BOP notified Singleton of its decision not to award him the Trust Fund Supervisor position in a letter dated July 13th, 2004, but Singleton did not contact an EEO counselor until October 5, 2004, 84 days later. (Def. R. 56.1 Statement ¶¶ 34-35.)

Singleton does not contest these basic facts, but contends that it was not until September 23, 2004, when he found out that Ortiz-Garcia was given responsibility over the MDC trust fund position, "that he felt, and rightly so, that he [had been] discriminated against." (Pl. Opp'n 12.) However, the point in time when Singleton "felt" he was discriminated against is irrelevant to determining whether Singleton complied with the exhaustion requirement. The 45-day period runs from the "date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action," 29 C.F.R. § 1614.105(a)(1), not the date on which plaintiff believes or has reason to believe the action to be discriminatory. "The time period for contacting the EEO counselor begins to run from the date of the discrete employment action alleged to be discriminatory, not from the date of discovery of improper motivation." Fausto v. Reno, 955 F. Supp. 286, 292-93 (S.D.N.Y. 1997). Because there is no genuine issue as

to whether Singleton complied with the requirement to contact an EEO counselor within 45 days, defendant is entitled to summary judgment on this ground.

  B.  <u>Racial Discrimination</u>

Even if this procedural default were not fatal to Singleton's claims, he could not prevail, because no reasonable jury could find, on this record, that he was a victim of discrimination or retaliation. Discrimination claims brought under Title VII are analyzed under the burden-shifting scheme set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). <u>See</u> <u>Farias v. Instructional Sys.</u>, 259 F.3d 91, 98-99 (2d Cir. 2001). Under that scheme, the plaintiff bears the initial burden of making out a prima facie case of discrimination. <u>Id</u>. This may be accomplished by showing that (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position in question; (3) plaintiff suffered an adverse employment action; and (4) there was a preference for a person not of the protected class. <u>Joseph v. Leavitt</u>, 465 F.3d 87, 90 (2d Cir. 2006). The fourth requirement can be satisfied by showing that the position was ultimately filled by an individual who was not a member of the protected class, or that there were other "circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class." <u>Farias</u>, 259 F.3d at 98.

Singleton has not made out a prima facie showing of discrimination. With regard to the first decision not to award Singleton the promotion, the undisputed evidence establishes that he was not qualified for the position. (Def. R. 56.1 Statement ¶ 7.) With regard to the second and third decisions, Singleton has failed to show a preference for a person not of the protected class, because in neither case was the promotion awarded to anyone. Singleton argues that there was a selection, insofar as Ortiz-Garcia, his boss at the MCC, who was already the Trust Fund

Supervisor at that institution, took on the responsibilities of the trustee position at the MDC. However, the assumption by Ortiz-Garcia of these additional responsibilities was not rewarded with higher pay, a new title, or any other benefits of a promotion. (Id. ¶¶ 31-33.) Thus, the decision to confer these responsibilities on her is not evidence of a preference for a person not in the protected class. Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996) (finding no prima facie case for failure to promote where duties of position were delegated to other employees); Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827, 2007 WL 2981465, at *8 (S.D.N.Y. Oct. 10, 2007) (same).[5]

Nor does the non-selection itself give rise to an inference of discrimination. A decision not to award a promotion to anyone might be discriminatory where the decision was motivated by discriminatory animus, for example, where all the applicants are members of the protected class. However, in this case, there were five qualified applicants from a diverse range of backgrounds: three black men (including Singleton), a white man, and a black woman. (Def. R. 56.1 Statement ¶ 12.) Since the decision not to fill the position with anyone also denied it to a white man, there is nothing in that decision, standing alone, to suggest racial animus. Moreover, defendant offers evidence of circumstances inconsistent with an inference of discrimination,

---

[5] It is not relevant that, as Singleton avers, the combined position "should have been opened up to competition," or that Ortiz-Garcia "probably did deserve an increase in pay." (Pl. Opp'n 9.) Presumably, Singleton is suggesting that the consolidation somehow violated BOP promotion or salary policies. But as Singleton knows from his previous litigation against the BOP, even if this suggestion is true, "a showing that defendant violated its own promotion or hiring policies is insufficient to withstand summary judgment where plaintiff has not shown that the policies were disregarded for discriminatory reasons." Singleton v. Fed. Bureau of Prisons, No. CV-04-1526, 2006 WL 1329712, at *9 (E.D.N.Y. May 16, 2006). Whether or not Ortiz-Garcia is underpaid has no bearing on Singleton's situation. The fact is that the position for which he applied was not awarded to Ortiz-Garcia, but eliminated.

such as the fact that there have been and continue to be Trust Fund Supervisors in the BOP's Northeast Region who are African-American.[6] (Henderson Decl. ¶ 2.) Accordingly, Singleton has not met his burden of showing prima facie evidence of discrimination, and defendant is entitled to summary judgment.

Moreover, even had Singleton made out a prima facie case, defendant would still be entitled to summary judgment. Under the McDonnell Douglas burden-shifting framework, a defendant may rebut a prima facie showing of discrimination by articulating a legitimate, non-discriminatory reason for the employment decision at issue. Texas v. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). To meet this burden, the defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. at 257. When a defendant does this, the burden shifts back to the plaintiff, who has the ultimate burden of persuading the trier of fact that the reason proffered by the defendant is a "pretext," and not "the true reason for the employment decision." Id. at 256. He does this either directly by showing "that a discriminatory reason more likely motivated the employer or indirectly by showing that

---

[6] Singleton disputes this evidence, contending that "there is in fact a pattern that when African-Americans apply for positions in the northeast region in the financial management sector, that 100 percent of the time they have to reapply," and that after reapplying, they never get the positions. (Singleton Dep. 68-69.) He cites the "vacancy log" as his basis for this knowledge, but in fact the vacancy log shows only positions listed and filled for a single year, in 2004. (Richardson Decl. Ex. J.) Thus, it does not indicate how many financial management positions are filled by African-Americans in total. Moreover, the vacancy log only provides information about successful applicants, so it is not possible to conclude anything about the racial makeup of unsuccessful applicants, and whether re-announcements of positions occur disproportionately when the applicant pool is black. Singleton provides no other basis for his blanket statement about a pattern of discrimination, and thus he does not appear to have personal knowledge about such a pattern. Accordingly, his statement would be inadmissible at trial, and does not raise a genuine issue of material fact.

the employer's proffered explanation is unworthy of credence." Id.

Defendant has articulated legitimate, non-discriminatory reasons for its decision. BOP officials offer sworn statements about concerns that BOP administration was "top-heavy" with supervisory positions (Def. R. 56.1 Statement ¶¶ 14-15), and that there was a BOP region-wide mandate to reduce supervisory staff (id. ¶ 25). According to defendant's account, the decisions to re-announce the MDC Trust Fund Supervisor position, and then to fold its responsibilities into the MCC Trust Fund Supervisor position, were a result of these pressures, and not of any racial animus toward the applicants for the position. (Id. ¶¶ 26-33.)

Singleton contends that these proffered reasons are pretextual, but he does not offer evidence sufficient to create a genuine issue of material fact. Singleton has not disputed the existence of the BOP's concerns or of the mandate to reduce supervisory staff. But he says that the consolidation of the position was nonetheless pretextual because it would not save BOP any money. According to Singleton, "the salary for the Trust Funds Supervisor does not come from salary and expense funds but from commissary profits, a separate source [that is not] part of the yearly funds appropriated to each agency by Congress." (Singleton Aff. ¶ 12.) Singleton cites no evidentiary support or other documentary source for his claims about the BOP budgeting process, and has not established that he has personal knowledge on that subject. But even assuming that he does, the source of the Trust Funds Supervisor's salary has no bearing on the BOP's proffered rationale. Even if the savings from consolidating the Trust Fund Supervisor position would not save money in the general BOP budget, it would save money in *some* budget overseen by the BOP, by creating a larger surplus of "commissary profits" that could be used for other purposes. Moreover, the source of funds is irrelevant to BOP's concern, admitted by

Singleton, to avoid a "top-heavy" supervisory structure. This concern is not merely budgetary, but reflects a concern for proper management.

Singleton offers no evidence to refute the defendant's proffered business rationales for its decisions. And he offers no affirmative evidence that racial bias affected the decisions or motivated the decision-makers. Accordingly, Singleton has not created a genuine issue of material fact as to whether defendant's proffered reasons are pretextual, and these legitimate, non-discriminatory reasons therefore entitle defendant to summary judgment on the claims of racial discrimination.

    C.    <u>Retaliation</u>

For similar reasons, Singleton has also failed to raise a genuine issue concerning whether the failure to promote was retaliation for his earlier EEO activity. In addition to forbidding discrimination against individuals of a protected class, Title VII also forbids discrimination against an employee who has "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C.A. § 2000e-3(a). A prima facie case of such retaliation is made by showing that (1) plaintiff engaged in protected activity; (2) plaintiff's employer was aware of this activity; (3) plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. <u>Cifra v. G.E. Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001). As with a claim of discrimination, a defendant may rebut a prima facie showing of retaliation by proffering evidence of a legitimate, non-retaliatory reason for the adverse employment action, which shifts the burden back to plaintiff to point to evidence that the employer's explanation is "merely a pretext for impermissible retaliation." <u>Id</u>.

Singleton has made out a prima facie case of retaliation. It is undisputed that Singleton engaged in protected activity and that he suffered an adverse employment action. (Def. R. 56.1 Statement ¶¶ 3, 34.) And defendant's awareness of this activity follows from the fact that the BOP was actively defending itself in litigation against Singleton, even if specific decision-makers within the BOP were unaware of this litigation. See Kessler v. Westchester County Dep't of Soc. Services, 461 F.3d 199, 210 (2d Cir. 2006) (awareness satisfied where corporate defendant contested discrimination complaint, even though individual decision-maker may not have been aware of that complaint); see also Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) ("general corporate knowledge that the plaintiff has engaged in a protected activity" sufficient to prove awareness). Finally, Singleton has created a genuine issue as to the existence of a causal connection between his EEO activity and the decisions not to award him the promotion. While Singleton has not offered any direct evidence of such a connection, a causal connection "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Cifra, 252 F.3d at 217. Because Singleton's litigation against the BOP was ongoing at the time of the decisions not to promote him, see Singleton v. Fed. Bureau of Prisons, No. CV-04-1526, 2006 WL 1329712, at *2-3 (E.D.N.Y. May 16, 2006), such decisions necessarily followed closely on protected activity by Singleton. Thus, a reasonable jury could conclude that the adverse decisions were retaliation for Singleton's ongoing lawsuit.

Defendant is nevertheless entitled to summary judgment on the retaliation claim because he has articulated a legitimate, non-retaliatory reason for those decisions, namely, the pressures to reduce BOP supervisory staff discussed at length above. See Section II.B, supra. In light of

these reasons, which are unrefuted, and the lack of any affirmative evidence of retaliatory motive, there are no genuine issues of material fact for trial.

### III.     Removal as Acting Trust Fund Supervisor

Singleton's claim that the decision to relieve him of his duties as acting Trust Fund Supervisor was retaliation is not procedurally barred, since he was notified of the decision on September 23, 2004, and he contacted the EEO counselor on October 5, within the required 45-day time period.  Nor has the defendant established as a matter of law that relieving Singleton of these duties did not constitute an "adverse employment action."  An employment action is adverse if the knowledge that the employment action would follow would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  While "reassignment of job duties is not automatically actionable," changing an employee's duties is a "classic and widely recognized example of forbidden retaliation," and whether a particular reassignment of duties is actionable "depends upon the circumstances of the particular case."  Id. at 71.  In Burlington Northern, the Supreme Court upheld a jury determination that removing an employee from being a "forklift operator" was adverse, even though the removal did not cause a change in pay or rank, in part based on the fact that the position "required more qualifications" and was therefore considered "an indication of prestige."  Id.

Drawing all inferences in Singleton's favor, a reasonable jury could find that replacing Singleton as acting Trust Fund Supervisor constituted an adverse employment action. Singleton's duties were to take over for his own boss in her absence, and so it is plausible, if not likely, that the performance of her duties required greater qualifications, and would be associated

13

with prestige within the BOP. Indeed, there is evidence that the position improved the attractiveness of Singleton as a candidate for future promotion. Singleton points to a prior BOP decision to hire a Trust Fund Supervisor that took into account a candidate's prior experience as acting Trust Fund Supervisor. (See Singleton Supp. Aff. Ex. B at 27-28.) While the position of acting Trust Fund Supervisor was not an official position within the BOP, and it was not remunerated, a reasonable jury could nevertheless conclude on these facts that relieving an employee of the responsibilities of acting Trust Fund Supervisor could have "dissuaded a reasonable worker from making or supporting a charge of discrimination."

However, defendant is nevertheless entitled to summary judgment. BOP offers evidence that making Oladomoye Assistant Trust Fund Supervisor at the MCC, which obviated the need for an acting Trust Fund Supervisor there, was a consequence of the decision to consolidate the Trust Fund department generally across the two facilities, a decision made in response to the pressures to reduce BOP supervisory staff discussed above. (Connors Supp. Decl. ¶ 4.) Singleton offers no evidence to rebut this evidence of a legitimate, non-discriminatory reason for relieving him of these duties.

Instead, Singleton's response is to quote Gordon v. New York City Bd. of Educ., 232 F.3d 111 (2d Cir. 2000), for the proposition that a plaintiff need not "disprove a defendant's proffered rationale for its adverse action in order to prevail." Id. at 116. This is true, insofar as a plaintiff may instead prove retaliation by "showing that retaliation was one of a number of motivating factors," including plaintiff's proffered rationale. Id. at 118. See also Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 123 (2d Cir. 2004) ("[T]o defeat summary judgment within the McDonnell Douglas framework the plaintiff is not required to

14

show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.") But Singleton has also failed to point to any affirmative evidence that retaliation factored in at all into the motivations for relieving him of his duties.

Even though Singleton need not disprove the legitimacy of defendant's proffered rationale, the burden of persuasion still rests on him to prove "that the actual motivations more likely than not were discriminatory." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 469 (2d Cir. 2001). In the face of credible and unrefuted evidence of a non-discriminatory reason for defendant's decision, and the complete absence of any affirmative evidence of retaliatory motives, no reasonable jury could conclude that this burden has been met. Accordingly, defendant is entitled to summary judgment on this claim of retaliation as well.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiff's complaint is dismissed in its entirety.

SO ORDERED.

Dated: New York, New York
       June 13, 2008

_____
GERARD E. LYNCH
United States District Judge

15